FILED 10 JUN 2 9 09:50 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MARK ALLEN PINNELL,                          06-CV-828-BR

          Petitioner,                 OPINION AND ORDER

v.

BRIAN BELLEQUE, Warden,

          Respondent.


**STEVEN T. WAX**
Federal Public Defender
**C. RENEE MANES**
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR  97204
(503) 326-2123

        Attorneys for Petitioner

**JOHN R. KROGER**
Attorney General
**CAROLYN ALEXANDER**
**TIMOTHY A. SYLWESTER**
Assistant Attorneys General
1162 Court Street N.E.
Salem, OR  97301
(503) 378-4402

        Attorneys for Respondent


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Petitioner Mark Pinnell's Motion (#192) for Summary Adjudication of the Seventeenth Claim for Relief.  Petitioner contends in his Motion that this Court should grant him habeas relief on this Claim because his rights to a fair and impartial jury under the Sixth and Fourteenth Amendments allegedly were violated during his second penalty-phase trial when Joyce Grau, the trial judge's secretary acting as bailiff, informed jurors during their sentencing deliberations that the trial judge would keep them there until they reached a verdict and that this could be late into the night.  According to Petitioner, Ms. Grau's statement was wrong as a matter of law (Subclaim A); constituted a coercive charge under *Allen v. United States*, 164 U.S. 492 (1896)(Subclaim B); and unconstitutionally interfered with the jury's function by providing extraneous information that affected the jury's deliberation (Subclaim C).

The State asserts in its Response that (1) the affidavits that addressed Ms. Grau's statement were deemed inadmissible in state court and, therefore, are not properly before this Court; (2) any claim that the Oregon courts should have examined the admissibility of the affidavits under the Federal Rules of Evidence is procedurally defaulted; and (3) even if the affidavits are admissible here, Claim Seventeen is without merit.

2 - OPINION AND ORDER

For the following reasons, the Court **DENIES** Petitioner's Motion.

### BACKGROUND

Petitioner was initially tried and convicted in May and June 1988 and was sentenced to death on October 7, 1988.  On direct review, the Oregon Supreme Court upheld Petitioner's convictions but remanded for a new penalty-phase trial.  *State of Or. v. Pinnell*, 311 Or. 98 (1991).

Petitioner's second penalty-phase trial was held in 1992 before the Honorable Jon B. Lund, Washington County Circuit Judge, and the jury again imposed a death sentence.  Sometime thereafter the foreperson of Petitioner's second penalty-phase jury, Harry Randall, apparently accompanied his son to a meeting with Keith Walker who, along with co-counsel, represented Petitioner during the second penalty-phase trial.  Although the meeting was on an unrelated legal matter, it appears Mr. Randall indicated during that meeting that Mr. Walker had nearly won Petitioner's case.  This conversation prompted the creation of the Randall Affidavit, which is at issue here.[1]  The Randall Affidavit is dated June 16, 1994, more than two years after the jury reached its verdict on April 13, 1992.

---

[1]  The source of this history relating to the origin of the Randall Affidavit is the post-conviction trial court transcript. *See* Resp't Ex. 268 at 4-5.

3 - OPINION AND ORDER

Petitioner did not present to the Oregon Supreme Court on direct review a claim related to Ms. Grau's contact with the jury during sentencing deliberations.  The Oregon Supreme Court upheld Petitioner's death sentence and entered its judgment on September 7, 1994.  *State of Or. v. Pinnell*, 319 Or. 438 (1994).  Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court.

On November 3, 1994, Petitioner filed a petition for post-conviction relief (PCR) in state court.  Among his other claims for relief, he alleged the following:

* * *

FOURTH CLAIM FOR RELIEF

A.     The trial judge in the second penalty
       proceeding, Judge Jon B. Lund, violated
       Petitioner's . . . rights to due process and
       a fair penalty proceeding under the Eighth
       and Fourteenth Amendments of the United
       States Constitution, and further violated
       Petitioner's rights to be free from cruel and
       unusual punishment and to have a fair penalty
       proceeding under the Eighth Amendment to the
       United States Constitution . . . when the
       trial court erred as follows:

* * *

5.     The trial court bailiff improperly and
       prejudicially communicated with the jury in
       violation of petitioner's Federal and State
       Constitutional rights as set out in paragraph
       A, <u>supra</u>, of this claim and further violated
       ORCP 59C(5) and ORS 136.330(1) when said
       bailiff communicated to the jury that they
       would not be allowed to go home until they
       reached a verdict which said conduct by the
       trial court bailiff was plain error and

> resulted in denial of fundamental due process
> and resulted in miscarriage of justice, and
> an unreliable verdict all in violation of the
> Eighth and Fourteenth Amendments to the
> United States Constitution.

Resp't Ex. 127 at 20-22 (underlined emphasis in original).

In support of this claim, Petitioner sought to admit the Randall Affidavit as well as an Affidavit from David Rogers, Petitioner's post-conviction investigator who interviewed Ms. Grau. In its consideration of Petitioner's claim, the PCR court admitted the Randall Affidavit, but sustained the state's objection to admission of the Rogers Affidavit on the ground of hearsay. At the conclusion of an evidentiary trial, the PCR court denied Petitioner's claim on the merits based on the conclusion that Petitioner had not demonstrated he was prejudiced by Ms. Grau's statement.

Petitioner challenged the PCR court's denial of this claim in his appeal to the Oregon Court of Appeals, but he did not take issue with the PCR court's specific finding that the Rogers Affidavit was inadmissible. The State, however, cross-moved on the issue whether the PCR court erred when it admitted the Randall Affidavit. The Oregon Court of Appeals agreed with the State and determined the Randall Affidavit was not admissible, affirming the PCR judgment in a written opinion as follows:

> We review the admission of a juror's affidavit
> regarding jury deliberations for abuse of

5 - OPINION AND ORDER

discretion.  *Koennecke v. State of Oregon, 122 Ore. App. 100, 103, 857 P.2d 148, rev. den., 318 Ore. 26, 862 P.2d 1306 (1993).*  It is a long-standing rule in Oregon that the "affidavit[s] of jurors will not be received to impeach their verdict."  *Cline v. Broy, 1 Ore. 89, 90 (1854).*  While that flat prohibition has been relaxed somewhat since the nineteenth century, it is still "'a strong policy in Oregon to protect jury verdicts from attack, and courts are hesitant to interrogate jurors after they have reached a verdict in order to probe for potential misconduct.'"  *State v. Cheney, 171 Ore. App. 401, 415, 16 P.3d 1164 (2000), rev. den., 332 Ore. 316, 28 P.3d 1176 (2001)(quoting Koennecke, 122 Ore. App. at 103); see also Leland Properties v. Burton Engineering and Survey, 152 Ore. App. 557, 563, 954 P.2d 851, rev. den., 327 Ore. 620, 971 P.2d 412 (1998)*("Few principles are more time honored in our jury system than the rule that affidavits of jurors will not be considered as evidence to impeach the jury's verdict.").  Only in cases in which the misconduct at issue "amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution" will the court consider "an attack upon a verdict by a juror's affidavit[.]"  *Carson v. Brauer, 234 Ore. 333, 345, 382 P.2d 79 (1963).*

In this case, the alleged misconduct is a statement by a member of the court staff to the jury during its deliberations in the second penalty-phase proceeding.  The jury foreperson's affidavit states that, sometime during deliberations, the jury was advised by the court's secretary that the court "would keep us there until we reached a verdict [and] that this could be very late into the night."  That does not amount to the sort of misconduct described in *Carson* that would warrant considering "an attack upon [the] verdict by a juror's affidavit."  The post-conviction trial court did not abuse its discretion in denying petitioner post-conviction relief on the ground that the jury verdict had been improperly coerced.

6 - OPINION AND ORDER

Resp't Ex. 273 at 9-10.

The Oregon Court of Appeals denied Petitioner's motion for reconsideration, and the Oregon Supreme Court denied his petition for review without comment.  *Pinnell v. Palmateer*, 200 Or. App. 303 (2005), *rev. denied*, 340 Or. 483 (2006).


## STANDARDS

### I.   Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is material "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*,

7 - OPINION AND ORDER

381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).  A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

The Federal Rules of Civil Procedure apply to habeas proceedings to the extent that the practice in such proceedings is not set forth in the Rules Governing 2254 Cases.  Fed. R. Civ. P. 81(a)(2).  *See also Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977)(summary judgment is an appropriate vehicle for resolving habeas-corpus cases).

## II.  **Deference**

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state-court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The "unreasonable application"

clause requires the state-court decision to be more than incorrect or erroneous. *Id.* at 410. For Petitioner to prevail under this clause, the state court's application of clearly established law must be objectively unreasonable. *Id.* at 409.

## DISCUSSION

As a preliminary matter, Petitioner contends the Oregon Court of Appeals in the last reasoned state-court decision addressing this issue in Petitioner's case failed to adjudicate his federal constitutional claim on the merits. Petitioner maintains the Oregon Court of Appeals decision is not, therefore, entitled to deference under 28 U.S.C. § 2254(d)(1). The Court disagrees. The Oregon Court of Appeals addressed Petitioner's claim related to the statement Ms. Grau made to the jury during the second penalty-phase proceeding and found the Randall Affidavit was inadmissible under state law. In other words, the Oregon Court of Appeals decision was a substantive determination that Petitioner's claim was unsupported by any evidence. Accordingly, the state appeals court affirmed the PCR court's denial of relief on the claim in a written merits decision entitled to deference under § 2254(d)(1).

In any event, even if the Court concluded the Oregon Court of Appeals decision was not entitled to deference and reviewed

Petitioner's claim *de novo* as he insists, this Court would reach the same result for the following reasons:

**I.    The Affidavits**

   **A.    Randall Affidavit**

   According to the Randall Affidavit:  (1) Ms. Grau communicated with the jury during their sentencing deliberations, but it is unclear whether she had contact with the panel or Randall only; (2) during deliberations there were four described votes:  7-5, 9-3, 11-1[2], and unanimous; (3) the communication between Ms. Grau and the jury occurred sometime during the period of the 7-5 and 9-3 votes; (4) Ms. Grau advised the jury "that Judge Lund would keep [them] there until [they] reached a verdict; that this could be very late into the night"; (5) Randall stated the "holdout juror" changed his vote after looking at the death photographs; (6) statements related to the need for unanimity and the possibility of a mistrial are characterized as beliefs of the jurors and Randall; (7) the source for these beliefs is not identified; and (8) Randall's Affidavit was made more than two years after the jury's death-penalty verdict.

   **B.    Rogers Affidavit**

   According to the Rogers Affidavit:  (1) the investigator's contact with Ms. Grau occurred approximately five years after

---

   [2]  The first number (i.e., "7" in "7-5") denotes the number of jurors in favor of a death-penalty verdict.

the jury returned a verdict; (2) Ms. Grau did not recall the
event; (3) Ms. Grau stated her general practice in answering a
question about how late a jury will deliberate is to tell them
that "we" have never released a jury while they are deliberating;
(4) Ms. Grau stated she never questions a jury about voting
progress; the statement attributed to her in the Randall
Affidavit would be normal procedure;, a verdict would be guilty,
not guilty, or hung; she did not and does not advise the jury of
these choices; and the jury must follow the court's instructions
even though she does not tell the jury that.

      **C.**   **Other Relevant Facts in the Record**

     In addition to the facts proffered in these Affidavits, the
record reveals (1) deliberations took approximately eight hours
(from 12:59 p.m. to 8:50 p.m.); (2) the jury submitted a written
question to Judge Lund around 6:00 p.m.; (3) although the parties
agreed at oral argument that it is reasonable to infer that Ms.
Grau's statement was not unsolicited, there is not any basis to
conclude she was told where they were in their deliberations in
connection with her statement; and (4) there is not any evidence
linking the putative juror confusion regarding unanimity or the
possibility of a mistrial to Ms. Grau's statement.

## II.  **Admissibility of the Affidavits**

     The State contends this Court should decline to consider the
Randall and Rogers Affidavits because Oregon courts have

12 - OPINION AND ORDER

definitively ruled that neither were admissible under Oregon law and a federal court must honor state-court determinations of state-law questions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).[3] Petitioner argues the Randall Affidavit is admissible under Federal Rule of Evidence 606(b) and suggests the Rogers Affidavit is admissible on the basis that "the federal courts sitting in habeas have the right to consider a broader range of evidence - including hearsay evidence - when considering a petition."

Federal habeas courts are split over whether evidence submitted to impeach a jury verdict is governed by state evidentiary rules or Federal Rule of Evidence 606(b). *See, e.g., McDowell v. Calderon*, 107 F.3d 1351, 1367 (9th Cir. 1997) (pre-AEDPA case in which the Ninth Circuit determined a federal district court appropriately applied Rule 606(b) despite a potentially conflicting state-evidence rule); *Lolisco v. Goord*,

---

[3] In addition, the State asserts because Petitioner never argued before the Oregon courts that the Federal Rules of Evidence required them to admit and to consider the Affidavits in support of his substantive claim, any claim based on the admissibility of these Affidavits under federal evidentiary rules is procedurally defaulted. The Court need not determine whether Petitioner adequately presented this argument to Oregon's state courts, however, because even if the Federal Rules of Evidence apply, Petitioner cannot prevail on his Motion. *See* 28 U.S.C. § 2248(b)(2) ("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

263 F.3d 178, 187-88 (2d Cir. 2001)(when considering reason-ableness of the state court's no-prejudice determination under the AEDPA, state evidence rules should apply rather than Rule 606 when a federal evidentiary hearing has not been held).

Petitioner contends the Randall and Rogers Affidavits reveal the jury was exposed to prejudicial extraneous influence by Ms. Grau. "Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." *Tanner v. U.S.*, 483 U.S. 107, 121 (1987)(citations omitted).

Rule 606(b) provides:

> [A] juror may not testify as to any manner or
> statement occurring during the course of the jury
> deliberations or to the effect of anything upon
> that or any other juror's mind or emotions as
> influencing the juror to assent to or dissent from
> the verdict or indictment or concerning the
> juror's mental processes in connection therewith.
> But a juror may testify about (1) whether
> extraneous prejudicial information was improperly
> brought to the jury's attention, [or] (2) whether
> any outside influence was improperly brought to
> bear upon any juror. . . . A juror's affidavit or
> evidence of any statement by the juror may not be
> received on a matter about which the juror would
> be precluded from testifying.

## A.    **Randall Affidavit**

In light of the fact that there is no controlling post-AEDPA Ninth Circuit law as to whether evidence submitted to impeach a jury verdict is governed by state evidentiary rules or Federal

Rule of Evidence 606(b), the Court will examine the admissibility of the Randall Affidavit under Rule 606(b).

Under Rule 606(b), the statement "that Judge Lund would keep [the jury] there until [they] reached a verdict; that this could be very late into the night" attributed to Ms. Grau is admissible under the exception as to whether any outside influence was improperly brought to bear on any juror. Moreover, the facts that a number of votes were taken and jurors continued to review evidence (*i.e.*, photos) are admissible to the extent they provide context for Ms. Grau's extraneous statement. *See United States v. Rutherford*, 371 F.3d 634, 644 (9th Cir. 2004)(quoting *U.S. v. Elias*, 269 F.3d 1003, 1020 (9th Cir. 2001)("[A] court can and should consider the 'effect of extraneous information or improper contacts on a juror's state of mind,' a juror's 'general fear and anxiety following' such an incident, and any other thoughts a juror might have about the contacts or conduct at issue.").

Because Randall's testimony regarding unanimity and the possibility of a mistrial relates to beliefs held by Randall and/or other jurors, it is inadmissible under Rule 606(b) as classic mental processes and internal jury deliberations. *Id.* at 639-40 (testimony as to whether jurors ignored instructions in reaching their verdict is inadmissible under Rule 606(b)). Moreover, Petitioner has failed to demonstrate this evidence bears any relation to Ms. Grau's contact with the jury.

**B.    Rogers Affidavit**

To the extent Petitioner offers the content of the Rogers
Affidavit for its truth, it is inadmissible as hearsay within
hearsay under Federal Rule of Evidence 805.  Even if the Court
considered the Affidavit under "a relaxed application of the
hearsay, best evidence, authentication, and other evidentiary
rules," it is only helpful to Petitioner to the extent it
confirms that Ms. Grau had contact with the jury, which is a
point that the State concedes.

Accordingly, the Court will not consider the content of the
Rogers Affidavit when it determines whether Petitioner can
prevail on his Motion.

**III. Statement Wrong as a Matter of Law (Subclaim A)**

In this Subclaim, Petitioner asserts Ms. Grau's statement to
the jury was incorrect as a matter of law because a valid jury
verdict in this death-penalty context did not have to be
unanimous.  As noted, however, this Subclaim is not supported by
the record because there is not any evidence linking the
statement and the jury's putative misunderstanding regarding
unanimity and the possibility of a mistrial.  Moreover, Ms.
Grau's statement did not misstate the unanimity rule, and it was
consistent with the trial court's jury instructions on the point
as follows:

> As you know, you will be given four questions,
> numbered 1 through 4, the death penalty case

questions that you must answer either "Yes" or "No."  The State has the burden of proof to prove beyond a reasonable doubt that the answers to each of Questions 1, 2, and 3 is "Yes."

Before any question can be answered "Yes," all 12 jurors must agree.

If you decide that the State has failed to prove the affirmative of any one or more of Questions 1, 2, and 3 beyond a reasonable doubt or you decide the answer to Question 4 is "No," you must answer any such question "No."

*If all 12 jurors cannot agree that a particular question should be answered "Yes," then the question must be answered "No."*

If you unanimously answer all four of the death penalty questions "Yes," the law requires that the penalty to be imposed shall be death.

If you answer one or more of those questions "No," the law provides that defendant shall be sentenced to life imprisonment without the possibility of release or parole unless ten or more jurors find that there are sufficient mitigating circumstances to warrant life imprisonment.  If ten or more jurors so decide, then the penalty to be imposed shall be life imprisonment with the possibility of release or parole.

* * *

*You are to answer this fourth question "No" if one or more of you find there is any aspect of the defendant's character or background or any circumstance of the offense that one or more of you believe would justify a sentence less than death.*

You may consider these questions in any order.  If you answer one or more of the death penalty questions "No," then you must decide if defendant should be sentenced to life imprisonment without the possibility of release or parole or to life imprisonment.

17 - OPINION AND ORDER

Supple. Filing (#210), Attach. A (jury instructions) at 100-03 (emphasis added).

Ms. Grau's reference in her statement to a "verdict" in no way suggests unanimity was required to return a verdict and, as noted, it is consistent with the trial court's instructions advising the jury that (1) in order to impose the death penalty, all 12 jurors had to unanimously answer all four questions "Yes" but (2) if all 12 jurors could not agree a question should be answered "Yes," it had to be answered "No" and a sentence less than death would be imposed.

## IV. *Allen* Charge (Subclaim B)

Petitioner argues Ms. Grau's contact with the jury coerced one or more of its members into believing they had to relinquish their conscientiously-held views in favor of reaching a verdict, thus violating Petitioner's fundamental right to due process and an adjudication before a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments.

In a typical *Allen* charge context, the judge instructs a deadlocked jury to continue deliberations in an attempt to reach agreement. Courts, however, have not hesitated to apply an *Allen* charge analysis when the instruction was delivered by someone other than the judge. *Weaver v. Thompson*, 197 F.3d 359, 365 (9th Cir. 1999). *See also Parker v. Gladden*, 385 U.S. 363, 363 & 366 (1966)("[T]he official character of the bailiff - as an officer

18 - OPINION AND ORDER

of the court as well as the State - beyond question carries great weight with a jury."); *Tobe v. Bensinger*, 492 F.2d 232, 238 (7th Cir. 1974) ("[I]n the present case, it is immaterial whether the jurors believed that the bailiffs were or, as is more probable, the judge through the bailiffs was telling them over and over again in one form or another that 'You must reach a decision.' In either case the statements were not only probably but were presumptively coercive and prejudicial."); *U.S. v. Brande*, 329 F.3d 1173, 1177 (9th Cir. 2003)("[A] juror is more susceptible to improper influence from a court officer than from spectators or parties to the case.").

In view of these holdings, the Court equates Ms. Grau's statement to a statement by the trial court in order to determine the fundamental question:  whether the jury was improperly coerced.  *See Weaver*, 197 F.3d at 365.  To that end,

> [w]e apply a "totality of the circumstances" analysis when examining whether a judge's statements to a jury were impermissibly coercive. In performing the *Allen* analysis, it is helpful to consider three relevant factors:  "(1) the form of the instruction, (2) the time the jury deliberated after receiving the charge in relation to the total time of deliberation and (3) any other indicia of coerciveness."

*United States v. Berger*, 473 F.3d, 1080, 1090 (9th Cir. 2007) (citations omitted).

Before applying these factors, the Court addresses Petitioner's contention that an *Allen* charge is *per se*

19 - OPINION AND ORDER

unconstitutional when, as here, no cautionary instruction was
given reminding jurors to hold onto their conscientiously-held
beliefs.

"Generally, when a judge tells jurors to reconsider their
positions, the judge must also warn the jurors to hold on to
their conscientiously-held beliefs." *Id*. "'While it is helpful
for an *Allen* charge to include such ameliorative language,
[however], its lack does not itself necessarily require
reversal.'" *Id*. at 1091 (quoting *United State v. Cuozzo*, 962
F.2d 945, 952 (9th Cir. 1992)). As noted, examination of an
*Allen* charge requires analysis of the "totality of the
circumstances." Whether a cautionary instruction was given is
only one factor a court should consider in its determination as
to whether a jury was improperly coerced. Indeed, there is
nothing "talismanic about a single element making a charge valid
or invalid." *Weaver*, 197 F.3d at 365. Nevertheless, Petitioner
relies on *McDowell v. Calderon*, 130 F.3d 833 (9th Cir. 1997), to
support his position that Ms. Grau's failure to remind jurors not
to abandon their conscientiously-held views when she made her
statement constitutes reversible error. *McDowell*, however,
involved a trial court's obligation to adequately address a jury
misunderstanding in a capital case after such misunderstanding
was disclosed to the court. Thus, *McDowell* does not support
Petitioner's argument that he should prevail on his Motion based

20 - OPINION AND ORDER

solely on the fact that no cautionary instruction was issued as
to Ms. Grau's statement when no disclosure of jury impasse or
confusion was ever made to Ms. Grau or to the court.

In evaluating the *Berger* factors, the Court notes there is
not any evidence in this record of jury impasse, frustration, or
concern indicating an inability to reach a verdict. *Cf. Weaver*,
197 F.3d at 362 (the jury inquired whether they had to reach a
verdict on all counts); *Tobe*, 492 F.2d at 234-35 (jury inquired
what would happen if they could not reach a decision and whether
there were any alternatives if they could not reach a decision).

Second, there is not any evidence that indicates how much
time passed after Ms. Grau's statement before the jury reached
its verdict. The record reflects the jury took at least two more
votes after the statement and continued to examine evidence
(*i.e.*, the death photographs). In addition, the record reflects
the jury continued to deliberate until 6:00 p.m. when they sent a
question to Judge Lund related to Petitioner's right to appeal.
These facts stand in stark contrast to those presented in *Weaver*
where the obvious impact of the bailiff's statement was
demonstrated by the fact that the jury reached a verdict five
minutes after such statement.

Finally, there is not any evidence that Ms. Grau's statement
was directed toward a specific juror or set of jurors or that she
knew anything about positions or a split in votes among the

21 - OPINION AND ORDER

jurors. As noted, there is not any evidence that the jury was deadlocked, had reached anything approaching an impasse, or considered further deliberations futile. *See United States v. Wauneka*, 842 F.2d 1083, 1089 (9th Cir. 1988). Moreover, the jury reached a clear verdict in the end. *Cf. Weaver*, 197 F.3d at 366 (court found it noteworthy that the jurors' votes appeared to have been in flux until the very end, even after the oral verdict was read aloud in open court "suggesting that minority jurors were ambivalent and thus susceptible to pressure."). Here there was not any apparent ambivalence on the part of jurors: The foreperson announced the jury had unanimously answered "yes" to all four death-penalty questions; the court polled the jurors, and each juror confirmed he or she had voted "yes" on each question; the verdict form indicated the jurors answered "yes" to each question; and each juror signed the verdict form.

Accordingly, based on the totality of the circumstances presented here, the Court concludes on this record that Petitioner has not demonstrated that Ms. Grau's contact with Petitioner's second penalty-phase jury had an impermissibly coercive effect on them.

## V.    Extraneous Influence on Jury During Deliberations (Subclaim C)

Petitioner contends the Randall and Rogers Affidavits establish Petitioner's second penalty-phase jury was exposed to extraneous prejudicial information which, pursuant to *Mattox v.*

22 - OPINION AND ORDER

*United States*, 146 U.S. 140 (1892), invalidates the verdict unless the State shows its harmlessness.

The Supreme Court held in *Mattox* that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Id.* at 150.  In *Rutherford*, the Ninth Circuit elaborated on the Supreme Court's approach to this issue:

> Subsequently, in *Remmer v. United States*, 347 U.S.
> 227 (1954), the Court established that any
> "private communication, contact, or tampering,
> directly or indirectly, with a juror during a
> trial about the matter pending before the jury" is
> deemed "presumptively prejudicial" and placed a
> heavy burden on the government to rebut the
> presumption by proving that the error was harmless
> beyond a reasonable doubt.

371 F.3d at 641.

In *Caliendo v. Warden of California Men's Colony*, the Ninth Circuit held the *Mattox* presumption of prejudice applies when the unauthorized contact is possibly prejudicial.  365 F.3d 691 (9th Cir. 2004).  Contact is possibly prejudicial if it raises a risk of influencing a verdict.  *Id.* at 697 ("Whether an unauthorized communication between a juror and a third party concerned the case is but one factor in determining whether the communication raised a risk of influencing the verdict.").  Other factors include the length and nature of the contact, the

identity and role at trial of the parties involved, evidence of
actual impact on the juror(s), and the possibility of eliminating
prejudice through a limiting instruction.  *Id*. at 697-98.

Applying these factors, the Court notes Ms. Grau's statement
did not address a question of law or fact in the case; her
statement involved a brief, isolated interaction with the jury;
the jury perceived her as having the authority of the court in
her role as bailiff; and there is not any evidence in the record
that demonstrates her statement had an actual impact on the jury,
particularly in light of the fact that the jury was properly
instructed by the trial court and is presumed to have understood
and followed those instructions.  *See Weeks v. Angelone*, 528 U.S.
225, 234 (2000).  The only evidence Petitioner can rely on to
suggest Ms. Grau's statement had an impact on the jury is the
Randall Affidavit reflecting, years after the fact, juror mental
processes which, standing alone, are insufficient for the reasons
already discussed.  Thus, the jury's putative misunderstanding
and potentially unnecessary deliberations to achieve a unanimous
verdict despite having been properly instructed is not
attributable to Ms. Grau's statement.  Moreover, at least two
more votes were taken and further evidence (photos) was examined
after Ms. Grau's statement, which indicates the jury continued to
deliberate after the statement.  Finally, Ms. Grau's statement
was not inconsistent with the trial court's instructions, and

there is not any evidence that Ms. Grau was aware of the jury's voting status nor any evidence that suggests an impasse or struggle amongst the jury was communicated to her or the court to trigger a need for a cautionary instruction.  In short, although the jurors were free to return a non-unanimous verdict at any point in their deliberations consistent with the trial court's instructions, the only conclusion from this record is that they chose to continue to deliberate until the time they announced their unanimous verdict imposing a death sentence.  Nothing in the record suggests Ms. Grau's statement was prejudicial.

On this record, therefore, the Court concludes Petitioner has failed to present evidence that the communication raised the risk of influencing the verdict sufficient to trigger the *Mattox* presumption of prejudice and to shift the burden of proof to the State.  *See Caliendo*, 365 F.3d at 696.  Accordingly, the Court denies Petitioner's Motion because he has failed to demonstrate the Oregon Court of Appeals decision on this claim was contrary to or involved an unreasonable application of federal law as set out in *Allen* and *Mattox*.  Moreover, as noted, even under *de novo* review of this claim, the Court would deny Petitioner's Motion.

## CONCLUSION

For these reasons, the Court **DENIES** Petitioner's Motion (#192) for Summary Adjudication of the Seventeenth Claim for Relief.

**IT IS SO ORDERED.**

DATED this _2nd_ day of ~~May~~ June, 2010.

_____
ANNA J. BROWN
United States District Judge

26 - OPINION AND ORDER